MAGNA FIRST NATIONAL BANK AND TRUST COMPANY, Plaintiff-Appellant, v. BANK OF ILLINOIS IN MT. VERNON, Defendant-Appellee.

Fifth District   No. 5—89—0053

Opinion filed March 27, 1990.

Joel A. Kunin and Steven M. Wallace, both of Carr, Korein, Schlichter, Tillery, Kunin & Montroy, of East St. Louis, for appellant.

Douglas A. Antonik and David M. Raymond, both of Law Office of Douglas A. Antonik, of Mt. Vernon, for appellee.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

The plaintiff, the Magna First National Bank and Trust Company, had sued the defendant, the Bank of Illinois in Mt. Vernon, for conversion of the proceeds of the sale of the inventory of Moll Furniture

Company, Inc. (the debtor), in which the plaintiff had a perfected security interest under the Uniform Commercial Code-Secured Transactions (UCC) (Ill. Rev. Stat. 1987, ch. 26, par. 9—101 *et seq.*). Both the plaintiff and the defendant filed motions for summary judgment, and both of the parties submitted this case for consideration by the court on the pleadings, on their stipulation, and on the memorandums of law filed in this case. The circuit court entered summary judgment for the defendant, and the plaintiff appeals. The only issue raised by the plaintiff is the sufficiency of the description of the collateral in the defendant's financing statement under section 9—402(1) of the UCC (Ill. Rev. Stat. 1987, ch. 26, par. 9—402(1)).

The facts of this case are as follows: The defendant was assigned the security agreements between Mark Twain Northland Bank and the debtor. These security agreements, which consisted of three separate documents, gave the defendant a secured interest in the debtor's accounts receivable, equipment, and inventory. A financing statement, filed with the Secretary of State on September 8, 1983, perfected the defendant's security interests.

Likewise, the plaintiff executed a security agreement with the debtor in which it was given a secured interest in the debtor's furniture and equipment, accounts receivable, and inventory. The plaintiff perfected its security interest in this collateral by filing a financing statement with the Secretary of State on April 9, 1985.

■■ The plaintiff does not dispute that the defendant has a prior perfected security interest in the debtor's accounts receivable and equipment. Clearly, the defendant had a perfected security interest which was superior to the plaintiff's security interest with regard to the debtor's accounts receivable and equipment, since the defendant's security interest had attached (Ill. Rev. Stat. 1987, ch. 26, par. 9—203(1)) and had been perfected by the defendant's filing of its financing statement prior to the plaintiff's filing of its financing statement (Ill. Rev. Stat. 1987, ch. 26, pars. 9—302(1), 9—303(1), 9—312(5)(a)).

The problem presented by the plaintiff is whether the language used in the defendant's financing statement was sufficient to include the debtor's inventory that was held for resale in the defendant's security interest. The language of the defendant's financing statement stated that the financing statement covered the following types (or items) of property:

"Security Agreement on all present and future Accounts Receivable, proceeds arising therefrom, chattel paper, contract rights and general intangibles however evidenced or acquired. Security Agreement on all machinery and equipment, furniture

and fixtures now held, purchased with loan proceeds or hereafter acquired and all additions and accessions thereto. *Security Agreement on all Goods of the Debtor being prepared for sale or being furnished under a contract of service, including raw materials, work in process, or materials used or consumed in the business of the Debtor.*" (Emphasis added.)

It is the language of the last sentence contained in the defendant's financing statement with which the plaintiff takes issue. The plaintiff claims that this language was insufficient as it did not use the term "inventory" and only gave a laundry list of certain types of inventory, none of which included goods held for resale, and therefore, the defendant's security interest in the debtor's inventory was not perfected, and the defendant had no rights whatsoever in the proceeds of the sale of the inventory. Because the plaintiff's financing statement used the term "inventory" in its description of the collateral, the plaintiff argues that it had a perfected security interest in the proceeds of the sale of the inventory which was superior to the defendant's nonperfected security interest in the inventory and, thus, the court's order was erroneous.

■ ■ The formal requisites for the sufficiency of a financing statement are that the names of the debtor and the secured party be given, that the financing statement be signed by the debtor, that the addresses of both the debtor and the secured party be given, and that "a statement indicating the types, or describing the items, of collateral" be given. (Ill. Rev. Stat. 1987, ch. 26, par. 9—402(1).) For a description of collateral to be sufficient, the financing statement need not be specific, but it must reasonably identify what it describes. Ill. Rev. Stat. 1987, ch. 26, par. 9—110.

■ The statute classifies "goods" into four different types, those being "consumer goods," "equipment," "farm products," and "inventory." (Ill. Rev. Stat. 1987, ch. 26, par. 9—109.) The definition of "inventory" given in the statute is, in pertinent part, as follows:

"Goods are

\* \* \*

(4) 'inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business." (Ill. Rev. Stat. 1987, ch. 26, par. 9—109(4).)

When the language of the foregoing quoted statute is compared to the language of the defendant's financing statement, it is evident that the defendant's financing statement parallels the language of the statu-

tory definition of the term "inventory."

■■ ■ Illinois has adopted the "notice filing" system for secured transactions, and the purpose of the financing statement is to put third parties on notice that the secured party who filed it may have a perfected security interest in the collateral described, and that further inquiry into the extent of the security interest is prudent. (*Allis-Chalmers Corp. v. Staggs* (1983), 117 Ill. App. 3d 428, 453 N.E.2d 145; *Interstate Steel Co. v. Ramm Manufacturing Corp.* (1982), 108 Ill. App. 3d 404, 438 N.E.2d 1381.) The statute itself provides that the description of collateral in the financing statement need not be specific, but only needs to reasonably identify the collateral. (Ill. Rev. Stat. 1987, ch. 26, par. 9—110.) The fact that the defendant's financing statement was similar to the statutory definition of the term "inventory," coupled with the purpose of the financing statement of simply providing notice, was sufficient to place the plaintiff on notice that the defendant may have a security interest in the debtor's inventory, and it was the plaintiff's obligation to check further to confirm the extent of the defendant's secured interest. Therefore, we find that the circuit court's determination that the defendant's financing statement was sufficient to give the plaintiff notice of the defendant's secured interest was not erroneous.

■■ ■ Further, we also note that the defendant's security agreement for the debtor's inventory was broader and was more specific than the defendant's financing statement, and that it clearly granted the defendant a secured interest in the debtor's inventory held for resale. The plaintiff, in its brief, conceded this point. Thus, the situation here was one in which there was a difference between the defendant's security agreement with the debtor and the defendant's financing statement, in that the defendant's financing statement did not delineate in complete detail what was stated in the security agreement. As we noted previously, the purpose of the financing statement is to put third-party creditors on notice of the possibility of another secured interest in the collateral described; however, it is the security agreement itself which creates or provides for the security interest. (*Allis-Chalmers Corp.*, 117 Ill. App. 3d 428, 453 N.E.2d 145.) Where there is a conflict between a financing statement and a security agreement, it must be the security agreement which delineates the rights of the secured party, provided that the financing statement was sufficient to put a third party on notice that the collateral may be subject to a security interest. As this court stated in *Allis-Chalmers*, a financing statement cannot expand or reduce the security interest created by the parties. (*Allis-Chalmers Corp.*, 117 Ill. App. 3d 428, 453 N.E.2d

145.) Because we have held that the defendant's financing statement was sufficient to give notice to third-party creditors with regard to the debtor's inventory and subsequently the proceeds of the sale of that inventory, it is clear that the defendant's secured interest, created by and set forth in the security agreement, was for all of the debtor's inventory.

For the foregoing reasons, the judgment of the circuit court of Jefferson County is affirmed.

Affirmed.

RARICK and CHAPMAN, JJ., concur.