SIGNAL CAPITAL CORPORATION, as Successor in Interest to Textron Financial Corporation, Plaintiff-Appellant and Counterdefendant-Appellant, v. LAKE SHORE NATIONAL BANK, as Trustee, *et al.*, Defendants (Aetna Life Insurance Company, Intervenor-Plaintiff; Elkay Manufacturing Company, Counterplaintiff-Appellee).

First District (1st Division)    No. 1—93—3721

Opinion filed June 30, 1995.

762

Wilson & McIlvaine, of Chicago (Thomas J. Magill and Clinton J. Wesolik, of counsel), for appellant.

McGurn & Associates, Ltd., of Chicago (Michael McGurn and John P. Cooney, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Signal Capital Corporation (Signal), appeals from an order of the circuit court of Cook County, entered on September 15, 1993, granting summary judgment in favor of defendant, Elkay Manufacturing Company (Elkay). On appeal, Signal contends that: (1) the trial court erred in finding that Elkay had a perfected purchase money security interest in certain telephone equipment which is superior to Signal's interest; and (2) the trial court erred in rendering moot Signal's motion to compel *pro rata* payment for the telephone equipment. For the following reasons, we affirm the judgment of the trial court.

The record discloses the following relevant facts. On February 26, 1985, Chicago Huron Partners (CHP) entered into a lease agreement with the RCA Corporation (RCA), for certain telephone equipment to be used at the Sheraton Plaza Hotel, 140-160 East Huron Street, Chicago, Illinois (Sheraton). Pursuant to the lease, RCA retained title to the telephone equipment. The lease provided that the telephone equipment would remain personal property and not become a fixture to the premises. CHP warranted that there existed no financing statements on file in any public office covering the telephone equipment, and agreed not to allow any lien, encumbrance or security interest to be created or attach to the telephone equipment. The lease required CHP to make 120 monthly rental payments, RCA reserving the right to repossess the telephone equipment for CHP's failure to pay. In the event of termination of the lease, CHP was required to return the telephone equipment to RCA, but RCA reserved the right to abandon the equipment in place. RCA was responsible for maintaining the telephone equipment. At the end of the 120 payments, and in exchange for consideration of $1, title to the telephone equipment would vest in CHP.

On January 25, 1988, Lake Shore National Bank (Lake Shore), a national banking association, not personally but solely as trustee under trust agreement dated November 30, 1984, and known as trust No. 4967, entered into a mortgage, as mortgagor, with Signal. Signal drafted the mortgage, which specifically provided that its lien interest, pursuant to the mortgage, extended to "all buildings, materials, goods, construction matters, furnishings, fixtures and equipment (excluding leased equipment) and all other tangible property of mortgagor." The mortgage did not designate CHP as a mortgagor.

On January 25, 1988, Lake Shore and CHP, as debtors, entered into a security agreement with Signal, granting Signal a security interest in certain collateral. Signal drafted the security agreement specifically excluding "equipment leased by Debtor." Paragraph 3 of

the security agreement set forth "Restrictions and Debtor's Warranties," providing, *inter alia*:

"Debtor represents and warrants to Secured Party that (a) Debtor has title to the Collateral free and clear of all liens, security interests, taxes, charges restrictions, setoffs, adverse claims, assessments, defaults, prepayments, defenses and conditions precedent other than those to which Secured Party has consented;

(b) the financing statements to be executed and delivered in connection herewith comply with applicable laws concerning form, content, and manner of preparation and execution;

(c) no financing statement covering any of the Collateral is on file in any public office other than that which reflects the security interest created by this Security Agreement and those to which Secured Party has consented;

(d) the execution and delivery of this Agreement will not violate any law or agreement governing Debtor or to which Debtor is a party."

On January 26, 1988, Signal recorded its mortgage in the office of the Cook County recorder of deeds. Two days later, on January 28, 1988, Signal filed financing statements pursuant to the requirements of the Uniform Commercial Code (UCC), in the office of the Illinois Secretary of State as to Lake Shore and CHP, and in the office of the Cook County recorder of deeds as to Lake Shore only. The statements included the same language used in the security agreement describing "collateral," and excluding "equipment leased by Debtor."

On December 18, 1989, Textron purchased Signal's right, title, and interest in and to the mortgage and security agreement, obtaining all of Signal's rights thereunder.

On July 27, 1990, Elkay and CHP entered into a security agreement and promissory note to advance funds to CHP to enable CHP to purchase and acquire rights and title to the leased telephone equipment. The Elkay agreement and note provided that once purchased, the telephone equipment would not become a fixture to the Sheraton, but would remain CHP's personal property. CHP executed a UCC-1 financing statement as debtor, naming Elkay as the secured party for the telephone equipment.

Elkay advanced CHP funds by wire transfer to the General Electric Capital Corporation (GECC) (successor in RCA's interest to the lease), on August 8, 1990. On August 10, 1990, Elkay filed a financing statement in the office of the Illinois Secretary of State.

On September 21, 1990, CHP received a bill of sale from GECC for the purchase of the telephone equipment. The bill of sale indicated that GECC delivered the legal and beneficial title to the telephone equipment to CHP.

On May 18, 1992, Textron brought an action seeking to foreclose CHP's mortgage against the Sheraton. In count I, Textron alleged that CHP and Lake Shore were in default under the loan documents. In count II, Textron sought to foreclose its lien interest against the telephone equipment collateral, which it alleged was subject to the mortgage, as well as the security agreement naming Lake Shore and CHP as debtors. Textron further requested a declaration that Elkay's interest in the telephone equipment was inferior to Textron's interest.

Elkay filed a counterclaim on October 19, 1992, seeking a declaration of the rights and relative priority of the parties, including Textron, as to the telephone equipment, and asserting affirmative defenses. In count I, Elkay asserted that Textron's mortgage did not place a lien upon CHP's property, and that the telephone equipment was not a fixture subject to the Illinois Mortgage Foreclosure Law (735 ILCS 5/15—1101 *et seq.* (West 1992)). In count II, Elkay alleged that it had a purchase money security interest in the telephone equipment which was superior to Textron's rights and interests.

On November 12, 1992, Textron filed a motion for summary judgment asserting that it held a first and superior lien against the telephone system. Textron alleged that Elkay's answers to its complaint failed to raise a genuine issue of material fact and therefore Textron is entitled to relief as a matter of law. Textron argued that its mortgage liens extend to the telephone equipment and that its mortgage recorded January 26, 1988, was recorded prior to any interest recorded by Elkay in 1992. Textron argued that the telephone equipment constitutes a fixture, not personal property.

On December 12, 1992, Elkay filed a cross-motion for summary judgment, attaching the affidavits of David Buffam, managing partner of CHP, and Clark G. Carpenter, chief financial officer of Elkay. Elkay asserted that no genuine issue of material fact existed to preclude summary judgment in its favor. In count I, Elkay argued that the telephone equipment is personal property, not a fixture, and that this intent was set forth in the RCA lease agreement and the security agreement between CHP and Elkay. Elkay further argued that Lake Shore never obtained an interest in the telephone equipment and that the equipment is not subject to the mortgage, as leased equipment is specifically excluded. In count II, Elkay asserted that it has a perfected purchase money security interest in the telephone equipment which has priority over Textron's security interest.

On December 16, 1992, the trial court entered an agreed judgment of foreclosure and sale to Aetna Life Insurance Company (Aetna), specifically reserving all issues regarding the telephone equipment as they applied to Textron and Elkay.

On March 16, 1993, Textron filed a motion to compel payment of a *pro rata* share for the telephone equipment.

The parties argued their cross-motions for summary judgment at a hearing before the trial court on April 27, 1993. Textron argued that the CHP/RCA lease was not a true lease, but rather a security agreement, as it constituted an installment sale of the telephone equipment to CHP, while RCA retained the title as security. Textron argued that because CHP obtained possession of the telephone system in 1985, Elkay could not have perfected its lien by its UCC filings in 1992, because the filing must occur within 20 days of taking possession.

Elkay responded that the lease expressly provided that the telephone equipment is personalty, that this fact is supported by affidavit, and that there is no evidence to the contrary before the court. Moreover, Elkay argued that both Textron's mortgage and security agreement specifically excepted out leased equipment. Elkay argued that whether or not the lease is a "true lease" is irrelevant, because under Illinois law, there can be no granting of security until title passes.

On June 18, 1993, the trial court granted Elkay's motion for summary judgment in its entirety and denied Textron's motion for summary judgment. In light of its ruling, the trial court found moot Textron's motion to compel payment of a *pro rata* share for the telephone equipment.

The trial court entered its written order granting Elkay's motion for summary judgment, and denying Textron's motion, on September 15, 1993. Therein, the trial court made the following findings:

(1) Both the mortgage and the security agreement assigned to Textron specifically excluded "leased equipment" from the collateral secured; therefore, by the terms of the mortgage and security agreement, Textron was precluded from obtaining any security interest in the leased telephone equipment until after the title passed to CHP. At that time, Textron's security interest attached pursuant to section 9—203 of the Illinois Uniform Commercial Code—Secured Transactions (UCC) (810 ILCS 5/9—203 (West 1992));

(2) The mortgage and security agreement did not distinguish between "true leases" and from leases defined under article 9 of the UCC as security interests. Further, the mortgage between Textron and Lake Shore only included property of Lake Shore, and Lake Shore never owned the telephone equipment; therefore, Textron did not obtain a security interest or lien in the telephone equipment under the mortgage;

(3) Subsequent to entering into the mortgage and security agreement, Elkay advanced purchase money funds on August 8, 1990, in order for CHP to obtain title to the telephone equipment, and CHP executed a promissory note, security agreement, and UCC financing statements, which set forth the telephone equipment as collateral on August 10, 1990, within 20 days from the date Elkay advanced the purchase money funds, Elkay perfected its purchase money security interest by filing the appropriate UCC financing statement with the Illinois Secretary of State, and which was recorded that same day;

(4) The 20-day statutory period which Elkay had to perfect its purchase money security interest began to run after CHP obtained title to the telephone equipment, and not when possession was transferred. *De Kalb Bank v. Purdy* (1990), 205 Ill. App. 3d 62, 562 N.E.2d 1223, is controlling and directly on point in that the 20-day period in which a purchase money creditor may perfect its purchase money security interest commences when the debtor obtains title to the collateral, not when the debtor obtains possession; the telephone equipment is not a fixture, but constitutes personal property;

(5) Signal and Textron at no time caused a UCC-2 financing statement to be recorded with the Cook County recorder's office naming CHP as the debtor; and

(6) Elkay has a perfected purchase money security interest in the telephone equipment which is superior to all other security interests, including Textron's.

The trial court concluded that Textron's motion to compel payment of *pro rata* share for the telephone equipment is moot.

On October 7, 1993, Textron reassigned all of its rights under the notes back to Signal.

Signal filed its notice of appeal and motion to substitute for Textron as a party plaintiff-appellant with the circuit court on October 15, 1993. On November 1, 1993, the trial court entered an order granting Signal leave to substitute as plaintiff-appellant in place of Textron.

On appeal, Signal contends that the trial court erred in entering summary judgment in Elkay's favor.

Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (735 ILCS 5/2—1005(c) (West 1992).) Summary judgment is to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt the movant's right to relief. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867; *Prodromos v. Forty East Cedar Condominium Association* (1994), 264 Ill. App. 3d

363, 636 N.E.2d 846.) Summary judgment is particularly appropriate where all parties file for summary judgment. (*In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 540, 510 N.E.2d 1057, 1059.) This court reviews a circuit court's resolution of disputed questions of law *de novo* and is not bound by the determination of the trial court. *Travelers Insurance Co. v. First National Bank* (1993), 250 Ill. App. 3d 641, 645, 621 N.E.2d 209.

■ Section 9—107 of the UCC defines a "purchase money security interest" as follows:

> "A security interest is a 'purchase money security interest' to the extent that it is
>
>> (a) taken or retained by the seller of the collateral to secure all or part of its price; or
>>
>> (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." (810 ILCS 5/9—107 (West 1992).)

Section 9—302(1) of the UCC requires the filing of a financing statement to perfect a purchase money security interest in nonconsumer goods. (810 ILCS 5/9—302(1) (West 1992).) Section 9—401(1)(c) designates the proper place of filing in order to perfect a security interest as the office of the Secretary of State. 810 ILCS 5/9—401(1)(c) (West 1992).

■ Section 9—312 of the UCC sets forth the rules of priority among conflicting security interests in the same collateral. Paragraph (4) provides as follows:

> "(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter." 810 ILCS 5/9—312(4) (West 1992).

Signal argues that the trial court erred in finding that Elkay had a perfected purchase money security interest in the telephone equipment superior to Signal's interest. Signal reasons that the telephone equipment was never actually leased and is therefore not excluded from Signal's mortgage and security agreement. Signal argues that CHP actually entered into an installment contract with RCA to purchase the telephone equipment and that CHP became the owner of the telephone equipment at the time it came into possession of the equipment in 1985. Therefore, Signal explains, Elkay did not provide purchase money financing to CHP to allow CHP to purchase the telephone equipment, because CHP already owned the telephone equipment. Signal posits that the 20-day period in which a purchase

money security interest must be perfected began to run on February 26, 1985, the date CHP "purchased" the telephone equipment. Signal concludes that Elkay therefore could not have perfected a security interest in the telephone equipment in August 1990.

In support of its contention, Signal relies on cases addressing the difference between a "lease" and a "security interest" under section 1—201(37) of the UCC (810 ILCS 5/1—201(37) (West 1992)). (*E.g., In re Anton's Lounge & Restaurant, Inc.* (E.D. Mich. 1984), 40 Bankr. 134; *In re Appeal of U.I.P. Engineered Products Corp.* (N.D. Ill. 1984), 43 Bankr. 480; *In re Loop Hospital Partnership* (N.D. Ill. 1983), 35 Bankr. 929; *In re Starr* (S.D. Ill. 1990), 113 Bankr. 481.) Signal asks this court to discern the intent of the parties to the CHP/RCA lease, in order to find that it is not a true lease.

The authority relied upon by Signal in support of its contention is distinguishable, as in each case cited, the litigating parties were actual parties to the agreements at issue, and not third-party creditors. (*E.g.,* in *In re Starr*, 113 Bankr. 481, debtors Jimmy and Karen Starr sought to determine the status of their lease agreement with Dicap Industries for a towing business.) In the present case, the record shows that neither CHP nor RCA, the contracting parties to the original agreement, is a party to this appeal. There has been no attempt by either party to this appeal to join CHP or RCA as a necessary party.

■ As a rule, the collateral description in a valid security agreement controls, and no extraneous materials will be considered. (*In re Martin Grinding & Machine Works, Inc.* (7th Cir. 1986), 793 F.2d 592; see also *Bluegrass Ford-Mercury, Inc. v. Farmers National Bank* (6th Cir. 1991), 942 F.2d 381.) Therefore, we are not at liberty to interpret the original intentions of the parties to the lease agreement in order to determine what property is intended to be covered by the security agreement.

■ The record shows that the CHP/RCA agreement was in fact a lease for telephone equipment and is supported by the affidavit of David Buffam, managing partner of CHP, attached to Elkay's motion for summary judgment. "[F]acts contained in an affidavit in support of a motion for summary judgment *** must be taken as true for purposes of the motion." (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 241, 489 N.E.2d 867, 871-72.) Signal provided no evidence or affidavits contrary to those provided by Elkay. Therefore, the trial court properly determined that Signal's mortgage and security agreement failed to distinguish between "true leases" and "pseudo leases."

■ In determining that Elkay timely perfected its security interest in the present case, the trial court relied primarily on *De Kalb*

*Bank v. Purdy* (1990), 205 Ill. App. 3d 62, 562 N.E.2d 1223. There, Purdy purchased cattle from Saunders, Bucher, and Barber Livestock (Saunders), and the cattle were delivered to Purdy. The terms of the sale provided, however, that title to the cattle remained in Saunders after delivery, until the check tendered by Purdy to Saunders was honored. At the time of the sale, De Kalb Bank (De Kalb) held a perfected security interest in all of Purdy's livestock, including after-acquired livestock. *Purdy*, 205 Ill. App. 3d at 64-65.

Purdy wrote a check drawn on De Kalb Bank in payment for the cattle. Eleven days later, De Kalb notified Purdy that the funds would not be advanced, and the check would be dishonored. Purdy contacted Saunders to discuss alternative payment, indicating that if he could not obtain other financing, he would return the cattle. *Purdy*, 205 Ill. App. 3d at 64-65.

Purdy obtained financing for the cattle from Shabonna State Bank (Shabonna) and paid Saunders in full. Shabonna then executed and recorded its financing statement within 20 days of advancing funds to Purdy, but greater than 20 days after Purdy obtained possession of the cattle. *Purdy*, 205 Ill. App. 3d at 65.

Subsequently, De Kalb sought to foreclose on its security interest in the cattle, claiming that it had a superior security interest in the cattle to that held by Shabonna. Shabonna responded that it had a perfected purchase money security interest in the cattle, since it had advanced the funds enabling Purdy to purchase the cattle. Shabonna argued that Purdy did not obtain title to the cattle until Saunders was fully compensated. The trial court granted summary judgment in favor of De Kalb and against Shabonna. *Purdy*, 205 Ill. App. 3d at 66.

On appeal, this court reversed, holding that the 20-day statutory period did not begin to run until Purdy acquired title to the cattle and became indebted to Shabonna as the holder of an unperfected purchase money security interest. This court found that Shabonna filed its purchase money security interest within the period of 20 days allowed by section 9—312(4) of the UCC (810 ILCS 5/9—312(4) (West 1992)), and therefore Shabonna's security interest is entitled to priority. *Purdy*, 205 Ill. App. 3d at 74.

Signal argues that the trial court improperly relied on *Purdy*, because here, only a single transaction was at issue, and in *Purdy*, unlike here, the parties specifically agreed that title would not pass until the check for full payment was honored. Signal also argues that the entire transaction in *Purdy* was completed within six weeks, a much shorter time frame than the transaction in the present case.

Signal's arguments are unavailing. Signal fails to effectively distinguish *Purdy* from the present case, as it provides no support for its contentions that application of *Purdy* is limited to cases involving an exchange of property in a single transaction and/or within a similar time frame.

Signal urges this court to find the present case analogous to *De Kalb Bank v. Klotz* (1986), 151 Ill. App. 3d 638, 502 N.E.2d 1256, and *North Platte State Bank v. Production Credit Association* (1972), 189 Neb. 44, 200 N.W.2d 1. However, these cases are in fact distinguishable in that in both cases, the debtors simultaneously obtained both possession and title to livestock at the time they took possession. The facts in the present case clearly indicate that CHP did not obtain title to the telephone equipment until more than five years after taking possession and after funds were advanced to complete a purchase of the equipment.

Finally, Signal argues that the language of its mortgage, financing statement and security agreement, excluding "leased equipment," is "open to varying interpretations" and therefore genuine issues of material fact remain precluding summary judgment.

■ The purpose of the financing statement is to put third parties on notice that the secured party who filed it may have a perfected security interest in the collateral described and that further inquiry into the extent of the security interest is prudent. (*Magna First National Bank & Trust Co. v. Bank of Illinois* (1990), 195 Ill. App. 3d 1015, 1019, 553 N.E.2d 64; *Allis-Chalmers Corp. v. Staggs* (1983), 117 Ill. App. 3d 428, 453 N.E.2d 145.) The statute itself provides that the description of collateral in the financing statement need not be specific, but only needs to reasonably identify the collateral. (810 ILCS 5/9—110 (West 1992).) However, it is the security agreement which creates or provides for the security interest, as the security agreement delineates the rights of the secured party, provided that the financing statement was sufficient to put a third party on notice that the collateral may be subject to a security interest. *Magna*, 195 Ill. App. 3d at 1019, citing *Allis-Chalmers*, 117 Ill. App. 3d 428.

■ In the present case, the record shows that Signal drafted and entered into a mortgage on January 25, 1988, specifically providing that its lien interest extended to "all buildings, materials, goods, construction matters, furnishings, fixtures and equipment (excluding leased equipment) and all other tangible property of mortgagor." Signal concurrently entered into a security agreement for collateral, specifically excluding "equipment leased by Debtor," and subsequently filed UCC financing statements on January 28, 1988, containing the identical language. The record thus shows that Signal's

mortgage and security agreement specifically exempted leased equipment from the collateral in which it had a security interest.

Contracts are construed against the drafter. (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 493, 505 N.E.2d 314, 319.) Here, Signal is the drafter of the mortgage, security agreement, and financing statements, so any ambiguity will be construed against Signal.

We find that Signal is estopped from arguing on appeal that a genuine issue of material fact exists regarding the interpretation of its own mortgage and security agreement, where: (1) Signal drafted the mortgage and security agreement, specifically excluding leased equipment; (2) Signal asserted in its motion for summary judgment that no genuine issue of material fact existed; and (3) Signal failed to make this argument in the trial court.

Under the facts and circumstances in the present case, the trial court properly determined that Elkay perfected its purchase money security interest by filing the appropriate financing statement on August 10, 1990, well within 20 days of advancing funds to CHP to purchase the telephone equipment on August 8, 1990.

We conclude that the trial court properly entered summary judgment in favor of Elkay.

■ Signal further contends that the trial court erred in rendering moot Textron's motion to compel *pro rata* payment for the telephone equipment.

Textron's motion sought compensation for the use of the telephone equipment from December 16, 1992, the date the foreclosure order was entered. Signal now argues that it should be compensated for Aetna's continued use of the equipment regardless of the fact that Textron did not prevail on its motion for summary judgment. By its statement, "[t]he only two parties with interests in the Telephone System are Signal and Elkay. In each case, the interest is premised upon the party's lien claim against the Telephone System," Signal implies that it has a lien interest in the telephone equipment.

The record clearly shows that the trial court did not find that Signal had a valid lien or security interest in the telephone equipment. The record further shows that at the April 27, 1993, hearing before the trial court, Textron's counsel agreed that if the trial court found in favor of Elkay on its motion for summary judgment, Textron's motion to compel *pro rata* payment would be moot:

> "THE COURT: In other words, *** if I ruled in your favor, it would seem to me then that you are entitled to compensation for the use of the *** phone system. If I rule in Elkay's favor, then you wouldn't be entitled.

MR. MAGILL: That is correct."

Under the circumstances, the trial court properly ruled that the motion to compel was moot.

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

BUCKLEY and WOLFSON, JJ., concur.