2019 IL App (1st) 190424-U

THIRD DIVISION
December 31, 2019

No. 1-19-0424

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| HUNTINGTON CLUB MASTER HOMEONWERS ASSOCIATION, an Illinois not-for-profit corporation, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16 L 63079 |
| PLATINUM POOLCARE AQUATECH, LTD., an Illinois Corporation, | ) ) ) | Honorable Martin S. Agran, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County; the trial court's entry of summary judgment in favor of defendant was not in error where there were no genuine issues of material fact precluding same and the doctrine of *res ipsa loquitur* was not applicable to draw an inference of negligence against defendant and thus, summary judgment in favor of plaintiff was properly denied.

¶ 2    This negligence lawsuit arose from damages plaintiff, a residential condominium association, sustained to their on-site, common area in-ground swimming pool, after it contracted with defendant, a professional swimming pool maintenance and repair company, to paint and make certain repairs to the pool. The pool was damaged while it remained empty through the

painting process. The pebble pipe at the bottom of the pool became obstructed which caused groundwater pressure to accumulate under the pool and with nowhere to exit causing the pool to become buoyant and float out of the ground. Both parties moved for summary judgment on plaintiff's amended complaint. Following argument, the trial court granted defendant's motion for summary judgment and denied plaintiff's cross-motion for summary judgment. Plaintiff appeals the trial court's judgment arguing the trial court committed reversible error (1) by granting summary judgment in defendant's favor where there existed genuine triable issues of material fact; and (2) by not applying the doctrine of *res ipsa loquitur* to the facts and evidence which plaintiff argues would require the trial court to (3) grant summary judgment in plaintiff's favor. For the reasons set forth below, we affirm the trial court's judgment granting summary judgment in favor of defendant and denying plaintiff's motion for summary judgment.

¶ 3                                  BACKGROUND

¶ 4      Plaintiff, Huntington Club Master Homeowners Association, is a residential condominium association which oversees and operates 246 condominium units in Hoffman Estates, Illinois which includes an on-site concrete commercial in-ground swimming pool as a common element for use by the individual unit owners and residents. Defendant, Platinum Pool Care Aquatech, Ltd. (Platinum), is a professional swimming pool maintenance and repair company that services and repairs commercial and residential swimming pools. For approximately 12 years, defendant acted exclusively as plaintiff's pool maintenance and repair company having performed services to include pool openings, closings, and painting.

¶ 5      On April 21, 2015, at plaintiff's request, defendant drained plaintiff's swimming pool and power washed the interior surfaces leaving the pool empty to paint the pool in preparation for the

upcoming season. The pool was emptied pursuant to defendant's standard pump down checklist which included removing the pool's hydrostatic valve.

¶ 6    The hydrostatic valve is a one-way, spring-loaded valve that is screwed onto the top of the pool's pebble pipe. The valve is located at the bottom of the deep end of the pool in the main drain box with a grate over the top. The purpose of the hydrostatic valve is to maintain pressure both under and inside the pool. Specifically, when the pool is full and there is enough pressure on top, the hydrostatic valve is pushed closed so that pool water does not flow through the pebble pipe and out of the pool allowing the pool to hold water and remain full. Additionally, when water pressure below the pool rises, the pebble pipe allows water through the valve and into the pool. Leaving the hydrostatic valve disconnected and out of the pool while the pool is empty is a safety measure employed by defendant to ensure the valve does not get stuck and also allows ground water to flow into the pool through the pebble pipe.

¶ 7    The pebble pipe which is screwed onto the hydrostatic valve is an18-inch vertical PVC pipe with perforated holes in its sides. The purpose of the pipe is to allow groundwater to enter the pool through the pipe if the groundwater pressure is higher than the pressure inside the pool or the water table is high. The gravel surrounding the pipe acts as a filter so that groundwater reaching the perforated holes of the pipe do not carry with it silt and other debris that could clog the pipe. For this reason, a good amount of gravel should be surrounding the pipe. When the pool is empty the open pipe allows water to freely travel from beneath the pool into the pool thereby limiting hydrostatic pressure that could otherwise cause the pool to become buoyant and pop out of the ground. The pebble pipe can only be installed when the pool is first constructed as a portion of the pipe is located in the ground underneath the pool and is surrounded by gravel and

backfill. Defendant was not involved in the pool's construction and pebble pipe installation over 30 years ago.

¶ 8    In addition to removing the hydrostatic valve, defendant also placed a portable sump pump in the sump pit at the bottom of the pool to remove any water that might accumulate through the open pebble pipe so the pool would remain dry for painting.

¶ 9    After the pool was emptied, John Gitzinger, defendant's commercial sales manager, met with Jeff DeWart, plaintiff's property manager, to discuss repairs to the pool to be made prior to its 2015 opening. The two got into the pool and walked around looking at cracks and other issues to be repaired and DeWart indicated whether he wanted defendant to make the repair. On April 23, 2015, plaintiff contracted defendant to do the following work on the pool:

    1) Cut out and install water stop in existing crack around pool wall;

    2) Caulk skimmer throats and any cracks or voids inside of skimmer;

    3) Provide grout repairs in tile and coping;

    4) Prep and wash pool for paint;

    5) Paint pool with (1) coat of epoxy swimming pool paint;

    6) Paint new stripes on stairs and in deep shallow transition line; and

    7) Paint will need to cure for 5-7 days before pool can be filled with water.

¶ 10    Paint cannot be applied to the pool when the weather is misty, very humid, or drizzling. Accordingly, it is not unusual for a pool to be left empty for several weeks during a painting project. Due to wet weather, plaintiff's pool was not painted until May 2, 3, and 7, 2015. Thereafter, five to seven days were required for the paint to cure before the pool could be refilled with water.

¶ 11    On May 12, 2015, defendant's service technician, Jesus Gonzalez, arrived at the pool to reinstall the hydrostatic valve and refill the pool. Upon his arrival, Gonzalez discovered the pool had "popped" having risen out of the ground severely damaging the pool.

¶ 12    Gonzalez immediately contacted his supervisors and was instructed to drill two holes into the bottom of the pool to relieve the groundwater pressure which he did resulting in the release of groundwater into the pool. Upon learning of the damage, John Gestrich, defendant's commercial service manager, arrived at the pool. Deducing that something was obstructing the pebble pipe, Gestrich took a broomstick that was holding up the extension cord for the sump pump and rammed it into the pipe. Muddy water began flowing up from the pebble pipe from underground. The following day, Terry Smith, defendant's owner, visited the pool and observed dirty water which he described as a clay-like muck near the drain box.

¶ 13    The damage to the pool was caused because the pebble pipe became obstructed with dirt and clay silt which caused groundwater pressure to accumulate under the pool with nowhere to exit. The resulting hydrostatic pressure caused the pool to become buoyant and float out of the ground. Defendant did not know how or when the pebble pipe became obstructed. Neither Smith or Gitzinger had ever witnessed a pebble pipe becoming clogged with clay and silt during their respective 40 plus and 20 plus years in the swimming pool business.

¶ 14    The pebble pipe can be visually and physically checked for blockages. However, prior to May 12, 2015, defendant did not have a policy or procedure in place to check and confirm that the pebble pipe was unobstructed after removal of the hydrostatic valve and prior to that date, defendant did not check plaintiff's pebble pipe for blockages. Since the damage to plaintiff's pool, defendant has implemented a new company policy requiring employees to use a pressure

washer after a swimming pool is drained to blow out the pipe and ensure the pipe is fully functioning and not clogged.

¶ 15    After initiating this action against defendant on December 19, 2016, plaintiff filed its amended two-count complaint on March 3, 2017 for breach of contract and negligence; however, the breach of contract claim was dismissed by the trial court on June 28, 2017.  Defendant filed a jury demand, responses, and affirmative defenses to defendant's original and amended complaints.  Discovery was undertaken to include depositions.

¶ 16    Defendant subsequently filed its motion for summary judgment in which it argued that plaintiff did not establish that the appropriate standard of care included defendant checking and maintaining the pebble pipe.  Defendant also argued plaintiff could not establish when, why, or how the pebble pipe became clogged.  Plaintiff filed its response to defendant's motion for summary judgment as well as a cross-motion for summary judgment in which it argued a finding of defendant's negligence was required with the application of *res ipsa loquitur* to the undisputed facts that the clogged pebble pipe caused the damage, the pipe could have been easily checked and cleared by defendant, (c) but defendant did not check the pipe as part of its standard procedure.  Following oral argument, the trial court entered an order granting defendant's motion for summary judgment and denying plaintiff's cross-motion for summary judgment.

¶ 17    Thereafter, plaintiff timely appealed.  This appeal followed.

¶ 18                                ANALYSIS

¶ 19    On appeal, plaintiff argues the trial court committed reversible error by (1) granting summary judgment in defendant's favor because "there were genuine triable issues of material fact that precluded summary judgment [;]" (2) "not applying the doctrine of *res ipsa loquitur* to the facts and evidence relating to [defendant's] actions (inactions)" resulting in a "presum[ption]

of [defendant's] negligence[;]" and (3) not granting summary judgment in plaintiff's favor after applying the doctrine of *res ipsa loquitur*. We affirm the judgment of the trial court for the reasons set forth below.

¶ 20    The parties filed cross motions for summary judgment pursuant to article II, section 2-1005 of the Code of Civil Procedure (Code). We review *de novo* the trial court's granting of defendant's motion and denial of plaintiff's motion. *Danhauer v. Danhauer*, 2013 IL App (1st) 123537, ¶ 35. "Summary judgment is appropriate where the pleadings, depositions, admissions, affidavits and exhibits submitted to the trial court reveal there is no issue of material fact and that the movant is entitled to judgment as a matter of law." *Id*. "Summary judgment is particularly appropriate where all parties file for summary judgment." *Signal Capital Corp. v. Lake Shore National Bank*, 273 Ill. App. 3d 761, 768 (1995). Notwithstanding, summary judgment is considered a drastic remedy. *Id*. "[S]ummary judgment is not appropriate: (1) if there is a dispute as to a material fact [citation]; (2) if reasonable persons could draw divergent inferences from undisputed material facts [citation]; (3) if reasonable persons could differ on the weight to be given the relevant factors of a legal standard [citation]. (Internal quotations omitted.) *Duffy v. Togher*, 382 Ill. App. 3d 1, 7 (2008). In the context of summary judgment, evidence is to be construed most strongly against the moving party. *Signal Capital Corp.*, 273 Ill. App. 3d at 767.

¶ 21    Where a defendant moves for summary judgment, "the plaintiff has an affirmative duty to bring forth all facts and evidence that satisfy his burden of proving the existence of a cognizable cause of action." *Holland v. Arthur Andersen Co.*, 212 Ill. App. 3d 645, 652 (1991); see also *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004) (holding that "[i]f the party moving for summary judgment supplied facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opposing party cannot rest on its pleadings to create a genuine issue of

material fact."). Though defendant need not prove his case at the summary judgment state, "he must at least come forward with enough evidence to create a genuine issue of material fact." *Holland*, 212 Ill. App. 3d at 652.

¶ 22                                    Genuine Issue of Material Fact

¶ 23    Plaintiff first argues there are genuine questions of material fact the trial court failed to adequately consider precluding summary judgment in defendant's favor.

¶ 24    "A cause of action for negligence requires the plaintiff to establish that the defendant owed a duty of care and breached that duty resulting in an injury proximately caused by the breach." *Bonner v. City of Chicago*, 334 Ill. App. 3d 481, 483 (2002). No negligence can be imposed on a defendant unless the plaintiff first demonstrates that a duty is owed it. *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1027 (2005). "The factors relevant to the question of whether a duty exists are: '(1) foreseeability that defendant's conduct will result in injury to another; (2) likelihood of injury; (3) the magnitude of guarding against it; and (4) consequences of placing that burden upon the defendant.' " *Bonner*, 334 Ill. App. 3d at 484 quoting *Curatola v. Village of Niles*, 154 Ill. 2d 201, 214 (1993). A court's determination as to whether a duty is owed by the defendant to the plaintiff is a question of law appropriately decided on a motion for summary judgment. *Libolt v. Wiener Circle, Inc.*, 2016 IL App (1st) 150118, ¶ 26.

¶ 25    The term proximate cause consists of two requirements as follows:

>         "cause in fact and legal cause. A defendant's conduct is a 'cause in fact' of the
>         plaintiff's injury only if that conduct is a material element and a substantial factor
>         in bringing about the injury. [Citations.] A defendant's conduct is a material
>         element and substantial factor in bringing about the injury if, absent that conduct,
>         the injury would not have occurred. [Citations.] 'Legal cause,' by contrast, is

largely a question of foreseeability. The relevant inquiry is whether 'the injury is of a type that a reasonable person would see as a likely result of his or her conduct. [Citation.]" (Emphasis omitted.) (Internal quotations omitted.) *Abrams*, 211 Ill. 2d at 258.

¶ 26 While circumstantial evidence may be used to establish proximate cause, "a fact cannot be established through circumstantial evidence unless the circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn." *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 35. Though proximate cause is generally a fact issue to be determined by the trier of fact, proximate cause can be determined by the trial court as a matter of law "where the facts as alleged show that the plaintiff would never be entitled to recover." *Abrams*, 211 Ill. 2d at 257-58. As set forth below, we find no facts presented by plaintiff which could establish defendant's duty of care included an obligation to check the pebble pipe when it painted and repaired defendant's pool pursuant to the parties' contract. We also find that the facts alleged show that plaintiff would never be entitled to recovery against defendant because defendant was not the proximate cause of the injury to plaintiff's pool.

¶ 27 On appeal, plaintiff argues the trial court failed to consider certain facts "from which a jury could reasonably find that the damage to [plaintiff's] swimming pool was more probably than not the result of defendant's negligence." With respect to defendant's duty of care, plaintiff points to defendant's failure to "visually inspect the pebble pipe for obstructions, despite direct access and an unobstructed ability to do so to ensure it was operational." It is uncontroverted that the clogged pebble pipe caused the damage to plaintiff's pool; that plaintiff did not check if the pebble pipe was clogged at any time after emptying the pool and before the pool popped out

of the ground. However, as defendant points out, neither party disputes that it is unknown exactly when the pebble pipe became clogged.

¶ 28    Because of this fact, it is unknown whether defendant's visually checking the pebble pipe after the pool had been drained would have actually prevented plaintiff's injury. Thus, plaintiff's conclusion that the damage to the pool would have been avoided is speculative and cannot be used to infer defendant's negligence. See *Id*. (holding "where proven facts demonstrate that the nonexistence of the fact to be inferred appears to be just as probable as its existence, the conclusion is a matter of speculation, conjecture, and guess and the trier of fact cannot be permitted to make that inference.").

¶ 29    Outside plaintiff's conclusory statement as to defendant's duty of care, there is nothing in the record to establish that defendant's duty of care owed to plaintiff required defendant to check the pebble pipe and arguably maintain watch over it for clogs from the time it drained the pool on April 21, 2015 until the pool was refilled on May 12, 2015. While we acknowledge defendant owed plaintiff some duty of care having been contracted by plaintiff to perform specific work for defendant we do not find that duty included an obligation to check the pebble pipe for clogs or to ensure the pipe remained unclogged for the duration of defendant's work on the pool.

¶ 30    It is undisputed in the record that the work being performed did not directly involve the pebble pipe. Plaintiff contracted defendant to repair cracks around the pool wall; make grout repairs; paint the pool; and when the paint dried, refill the pool with water. Defendant provided testimony that it emptied and prepped the pool for painting in accordance with its standard protocol. This testimony is undisputed. Undisputed testimony further establishes how pebble

pipes work and, when properly installed, filter out debris, like the debris that clogged plaintiff's pebble pipe in this instance.

¶ 31    There was no evidence to suggest that the damage to plaintiff's pool was foreseeable or even that it was a likely occurrence. To the contrary, two of defendant's employees testified they had never seen a pool pop in their decades of experience. This was the case, where the company had a protocol for emptying pools which was employed when emptying plaintiff's pool in preparation for painting. While being painted, pools often remained empty for several weeks because they cannot be painted during wet weather and additionally require five to seven days for the paint to cure. Moreover, defendant had also been servicing plaintiff's pool to include painting it over the course of at least the last 12 years. As such, defendant would have no reason to anticipate the pebble pipe was faulty or could have become clogged.

¶ 32    We acknowledge there was evidence that obstructions in the pebble pipe would be visually accessible and easily unclogged once the pool had been emptied and while it was being power washed. However, while it may not be a large burden on defendant to visually inspect the pebble pipe and clear out any obstructions immediately after the pool was drained and while it was being power washed, it would be significantly burdensome to require defendant to maintain watch over the pebble pipe throughout the duration of the painting process until the pool was refilled which would have been required here where there is no evidence the pebble pipe was clogged at the time plaintiff's pool was emptied. Nevertheless, given the obscurity of the occurrence of a clogged pebble pipe as evidenced by the record, and without any other evidence introduced by plaintiff to suggest otherwise, we are not prepared to say that defendant's duty of care included an obligation to visually inspect the pebble pipe in the performance of its contracted work for plaintiff. See *Holland*, 212 Ill. App. 3d at 652 (holding where defendant

moves for summary judgment "the plaintiff has an affirmative duty to bring forth all facts and evidence that satisfy his burden of proving the existence of a cognizable cause of action."); see also *Abrams*, 211 Ill. 2d at 257 (holding that "[i]f the party moving for summary judgment supplied facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opposing party cannot rest on its pleadings to create a genuine issue of material fact.").

¶ 33    Plaintiff argues that nothing in the record suggests its injuries were the result of an accident "especially when [defendant's] own President and Commercial Service Manager have never seen damage to a swimming pool like [plaintiff's] and they have been in the swimming pool repair business for over 40 and almost 30 years, respectively."  That the record does not include evidence that the damage resulted from an accident does not mean defendant acted negligently or even caused the accident.  Further, as pointed out above, if anything, defendant's employee's testimony that pebble pipes are rarely clogged only serves to undermine plaintiff's foreseeability argument and its conclusion that defendant's duty of care included an obligation to check the pebble pipe for clogs and arguably keep watch over the pipe for the entire duration the pool was drained which could be several weeks.  See *Bonner*, 334 Ill. App. 3d at 484 (holding factors relevant to whether a duty exists include the foreseeability that defendant's conduct will result in injury to another and the likelihood of injury).

¶ 34    Plaintiff also argues defendant could have taken reasonable steps to prevent the damage to its pool such as using a power washer to blow out any blockages after it drained and power washed the pool.  However, as noted above, this assumes, with no supporting evidence, that the pool was clogged when it was drained and that defendant had a duty to take such action.  Alternatively, plaintiff suggests defendant could have refused to do the work unless plaintiff assumed the risk or until plaintiff "made arrangements for the pressure relief concerns to be

fixed." However, the testimony in this case established that a pool popping is a rare occurrence. Defendant's president and employee had never seen this occur in there decades of pool repair work or during the at least 12 years it had serviced plaintiff's pool. Thus, there were no pressure relief concerns that existed. Defendant cannot be expected to come up with every obscure potential for damage that could result from circumstances not directly attributable to its own conduct and then be expected to guard or caution customers against the occurrence to avoid liability for these rare occurrences.

¶ 35    Plaintiff states that "[s]imilar to what this Court found in *Wells v. Colonial Heights Recreation Center, Inc.* a review of the record herein will demonstrate the trial court failed to adequately consider [plaintiff's] negligence claim in its grant of summary judgment dismissing [plaintiff's] Amended Complaint" because it "at a minimum contained triable questions of material fact precluding entry of summary judgment." We disagree and find the facts in *Wells* are distinguishable. The *Wells* case involved a negligence action filed by the plaintiff against her condominium management company and the company they hired to manage the condominium's common area pool stemming from injuries the plaintiff sustained while using a faulty ladder in the pool. *Wells*, 2013 IL App (1st) 111850, ¶¶ 3-4. There, "[t]he question before us [was] whether there was a triable issue precluding summary judgment as to defendants' failure to maintain a reasonably safe ladder in the condominium pool." *Id*. at ¶ 24. The record contained deposition testimony and interrogatories which contained evidence the defendants had control over the ladder; the defendants knew the ladder was defective; and an expert was expected to testify the defendants were negligent in failing to provide a slip-resistant and safely secured pool ladder which caused the plaintiff's injuries. *Id*. ¶ 27.

¶ 36    In contrast to *Wells*, here there is nothing in the record to establish that defendant's actions fell below the standard of care owed to plaintiff or that defendant otherwise acted improperly by not checking the pebble pipe upon draining of the pool and perhaps at all times thereafter given there is no evidence as to when the pebble pipe became obstructed.  See *Dyback v. Weber*, 114 Ill. 2d 232, 244 (1986) (Affirming the trial court's directed verdict in favor of the defendants where plaintiff, among other deficiencies at trial, presented no evidence as to the appropriate duty of care owed to it by defendant).

¶ 37    Instead, our review of the record establishes defendant, in anticipation of painting plaintiff's pool as contracted, emptied the pool pursuant to defendant's standard pump down checklist, removed the pool's hydrostatic valve cap as a safety measure, and placed a sump pump in the sump pit at the bottom of the pool to remove any water so the pool would remain dry as required for the painting and repairs plaintiff contracted defendant to perform.  Additionally, it is undisputed that defendant was not involved in the construction of plaintiff's pool over 30 years ago.  This construction would have involved the installation of the pebble pipe which, if done properly, would be surrounded by a good amount of gravel to filter the very type of debris that caused the clog in this instance.  We find nothing in the record that would contradict a conclusion that all of defendant's actions were consistent with the standard of care it owed plaintiff.

¶ 38    Having established that defendant acted consistent with the duty of care owed to plaintiff, we need not address the issue of proximate cause.  See *Aidroos v. Vance Uniformed Protection Services, Inc.*, 386 Ill. App. 3d 167, 175 (2008) (where reviewing court finds no duty of care owed to the plaintiff was violated, the issue of whether defendant's conduct was the proximate

cause of plaintiff's injuries need not be addressed). Accordingly, we find no genuine issue of material fact that would preclude summary judgment in defendant's favor.

¶ 39                                    *Res Ipsa Loquitur* Doctrine

¶ 40    We also conclude that the doctrine of *res ipsa loquitur* is not applicable in this case.

¶ 41    The doctrine of *res ipsa loquitur* is a rule of evidence that permits the trier of fact to draw an inference of negligence where plaintiff demonstrates it was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence and (2) by any agency or instrumentality within the defendant's exclusive control. *Gatlin v. Ruder*, 137 Ill. 2d 284, 295-96 (1990). A plaintiff must plead and prove both elements of *res ipsa loquitur* to invoke the doctrine. *Dyback*, 114 Ill. 2d at 242. " 'Whether the doctrine applies in a given case is a question of law which must be decided by the court, but once this has been answered in the affirmative, it is for the trier of fact to weigh the evidence and determine whether the circumstantial evidence of negligence has been overcome by defendant's proof.' " *Gatlin*, 137 Ill. 2d at 294 quoting *Metz v. Central Illinois Electric & Gas Co.*, 32 Ill. 2d 446, 448-50 (1965).

¶ 42    With respect to the first element of *res ipsa loquitur*, before the doctrine can be applied, there must be some evidence or testimony to establish the rare and unusual event or condition coupled with proof of a negligent act. *Spidle v. Steward*, 79 Ill. 2d 1, 10 (1980). A plaintiff is required "to show only that the result 'ordinarily,' not always, had negligent antecedents." *Id*. at 9. For purposes of summary judgment, only some evidence must be presented that plaintiff's injuries would not have occurred absent negligence. *Gatlin*, 137 Ill. 2d at 296-97. Nevertheless, "[e]vidence of more than a mere unusual occurrence" is required in order to infer negligence under *res ipsa loquitur*. *Id*. at 10. "Such an inference [of negligence] cannot be based solely upon the fact of a rare and unusual result, but such evidence must be coupled with proof of a

negligent act." *Adams v. Family Planning Associates Medical Group, Inc.*, 315 Ill. App. 3d 533, 545-46 (2000).

¶ 43    We begin our analysis of whether *res ipsa loquitur* applies to this case with an examination of the first element – that plaintiff was injured in an occurrence that ordinarily does not happen in the absence of negligence – and find that this element has not been satisfied precluding application of the doctrine.

¶ 44    It is undisputed that plaintiff's injuries in this case resulted because the swimming pool's pebble pipe became obstructed causing water to accumulate under the pool with no ability to be released through the clogged pebble pipe causing the pool to become buoyant and pop out of the ground.  However, plaintiff presents no evidence to support its conclusion that this injury could not have occurred absent negligence as required.  See *Spidle*, 79 Ill. 2d at 10; see also *Gatlin*, 137 Ill. 2d at 296-97.  While we recognize this case is decided on summary judgment, we note that plaintiff was given the opportunity through discovery and affidavits to further develop facts which would provide a basis to infer its injury was the kind that does not ordinarily occur in the absence of negligence, but in our view failed to do so.  See *Holland*, 212 Ill. App. 3d at 652 (holding where defendant moves for summary judgment "the plaintiff has an affirmative duty to bring forth all facts and evidence that satisfy his burden of proving the existence of a cognizable cause of action.").

¶ 45    Plaintiff cites *Heastie v. Roberts*, 226 Ill. 2d 515 (2007), which discussed the first element of *res ipsa loquitur*.  There the plaintiff was severely injured when he caught on fire while in the emergency room restrained to a cart and placed in a room not ordinarily used to seclude patients which was susceptible to fire.  *Id.* at 521-22.  Plaintiff asserted a negligence action against the hospital and various caretakers on the theory of *res ipsa loquitur* which was

dismissed on the pleadings. *Id*. at 519-520. Here, our Supreme Court reasoned that the first element of *res ipsa loquitur* was proven because "[o]ne needs no specialized medical knowledge to understand that leaving a patient restrained on a bed and left alone in a hospital emergency room to be exposed to an ignition source that sets him on fire, as happened [in *Heastie*], is something that does not ordinarily happen in the absence of negligence." *Id*. at 533. Unlike in *Heastie*, we cannot say it is common knowledge that a pool will not pop out of the ground absent some negligence and there is nothing in the record presented by plaintiff that would establish this conclusion. Accordingly, there must be some evidence or testimony to establish the rare and unusual event or condition coupled with proof of a negligent act. See *Spidle*, 79 Ill. 2d at 10.

¶ 46    In *Rahic v. Satellite Air-Land Motor Service, Inc.*, 2014 IL App (1st) 132899, ¶ 33, cited by plaintiff, the court found *res ipsa loquitur* inapplicable because the plaintiff who sustained injury when he slipped, had no memory or knowledge of how he sustained his injury. As a result, the record was completely devoid of any direct evidence of negligence by defendants and thus it was impossible to find the injury "would not have occurred in the normal course if the defendants had used ordinary care." *Id*. Similar to the circumstances in *Rahic*, there exists no evidence to support plaintiff's conclusion that a pool will not pop out of the ground absent negligence.

¶ 47    Plaintiff argues that defendant's president and commercial service manager's deposition testimony that "they have never seen damage to a swimming pool like plaintiff's" despite being "in the swimming pool repair business for over 40 and almost 30 years, respectively" and as such "it is reasonable for the Court to find that it is not an accident or something that ordinarily happens in the absence of negligence." Despite plaintiff's contentions here, Illinois case law to the contrary is well established. See *Spidle*, 79 Ill. 2d at 10 (more than an unusual occurrence is

required to infer negligence under *res ipsa loquitur);* see also *Adams*, 315 Ill. App. 3d at 545-46 (an inference of negligence cannot be based solely on the fact of a rare and unusual result without proof of a negligent act). Instead, evidence that two seasoned service persons had never seen a pool "pop" or even evidence that would blanketly establish that a pool popping rarely ever occurs, without something more to evidence negligence occurred is not enough under the first element for applicability of the *res ipsa loquitur* doctrine. *Id.*

¶ 48 Plaintiff further argues that "had [defendant] checked and cleared out the pebble pipe *** a simple task and something that could have easily been done in the normal course of draining the pool" the damage to plaintiff's pool would not have occurred. However, as noted above, defendant had no duty to undertake this action in the performance of its contractual work for plaintiff. Moreover, plaintiff's conclusion that the damages would not have occurred had defendant checked the pebble pipe is not supported by any evidence in the record.

¶ 49 To the contrary, the undisputed evidence in the record established that employees of both defendant and plaintiff inspected the pool on April 21, 2015 after it was emptied by defendant. It is unknown whether the pebble pipe was clogged prior to that date or at some point between then and May 12, 2015 when the pool was found to have popped. Accordingly, even if plaintiff had checked the pebble pipe "in the normal course of draining the pool" there is no evidence to support plaintiff's theory that this action would have prevented the damage to the pool. This is particularly true here where it is unknown when the pipe became clogged. Thus, plaintiff cannot show that the pool popping would not have occurred had defendant checked the pebble pipe when the pool was emptied.

¶ 50 As plaintiff is not able to establish the first necessary element of the *res ipsa loquitur* doctrine - that the damage to the pool would not have ordinarily occurred in the absence of

negligence, it cannot invoke the doctrine and we need not consider the second element -

defendant's control.  See *Dyback*, 114 Ill. 2d at 242 (requiring plaintiff to plead and prove both

elements of *res ipsa loquitur* to invoke the doctrine).

¶ 51                                    CONCLUSION

¶ 52    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 53    Affirmed.