In the Matter of Allen J. KAZMIER-CZAK and Carol A. Kazmierczak, Debtors.

Appeal of Paul SWANSON,
Trustee in Bankruptcy.

No. 93–3376.

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1994.

Decided May 23, 1994.

Michael G. Trewin (argued), New London, WI, for Paul Swanson, successor to the interest of Allen J. Kazmierczak and Carol A. Kazmierczak.

Francis J. Eustice, Gregory J. Fumelle (argued), Eustice, Albert, Laffey & Fumelle, Sun Prairie, WI, for Terra Intern. Inc.

Before POSNER, Chief Judge, and COFFEY and FLAUM, Circuit Judges.

POSNER, Chief Judge.

In 1990 and 1991, the debtors, a farm couple, had bought fertilizer and chemicals for their farm from Terra International on credit secured by their crops. The debtors executed a new security agreement each year, and each year a financing statement was duly filed to perfect Terra's security interest, and each year the debtors paid off their debt to Terra in full by the end of the year. In 1992 Terra again advanced credit to the debtors to enable them to purchase that year's fertilizer and chemicals and it has been stipulated that the parties intended to execute the usual security agreement, but before they got around to doing so the debtors declared bankruptcy. Terra nevertheless filed a secured claim for the $72,000 that the debtors owed it for the fertilizers and chemicals that they had bought, and applied to the crops, which had already been planted when the debtors declared bankruptcy. Terra based its claim to have a secured interest on the first paragraph in the 1991 security statement, which stated: "The undersigned 'Debtor grants to the undersigned Secured Party a security interest in [all crops now growing or hereafter grown on the debtors' farm] to secure all Debtor's present *and future* debts, obligations and liabilities of whatever nature to Secured Party" (emphasis added). The bankruptcy judge disallowed Terra's claim on the ground that the course of dealings between the parties disclosed an intention to execute a new security agreement for each year's advance of credit rather than to enforce the future-advances clause in earlier years' agreements. The district judge reversed, and the trustee in bankruptcy appeals.

■ A lien securing future as well as current debts, the lien created by a "dragnet" clause such as the one on which Terra relies, is a common device of secured credit. It is frequently confused with the even more common "floating lien." A floating lien extends the creditor's lien to cover property acquired by the debtor after the loan was made. A dragnet lien enlarges the size of the creditor's lien by any credit advanced by him to the debtor after the original loan was made. The lien in this case was (not unusually)

both, because the new credit was given for the acquisition of new property, the 1992 crops. But it is only the dragnet feature that is in issue.

■ Expressly authorized by section 9–204(3) of the Uniform Commercial Code, Wis. Stat. § 409.204(3), a future-advances lien saves the parties the trouble of executing a new security agreement every time there is a further extension of credit. It also backstops the lender against the possibility of an inadvertent failure by the borrower to execute the new agreement, as apparently happened here. The original agreement must make clear its applicability to future debts, but the 1991 agreement signed by the debtors in this case could not have been clearer. The fact emphasized by the bankruptcy judge, that the parties had intended to execute a fresh security agreement every year, has no weight at all. The "future debts" clause was a hedge against their failing to do so. They could of course have canceled it by mutual consent.

Courts have been concerned with a potential for abuse if, as in *John Miller Supply Co. v. Western State Bank,* 55 Wis.2d 385, 199 N.W.2d 161, 165 (1972), the future debts are unrelated to the current ones. See also *Mark Twain Kansas City Bank v. Cates,* 248 Kan. 700, 810 P.2d 1154, 1162–63 (1991); *Lundgren v. National Bank of Alaska,* 756 P.2d 270, 278–79 (Alaska 1987); *In re Estate of Simpson,* 403 N.W.2d 791 (Iowa 1987). The original basis for their concern was the ingenious but perhaps devious practice of some creditors who, having obtained a future-advances clause from the debtor, would then go around to the debtor's unsecured creditors, purchase their rights, and then argue that the purchases were future advances to the debtor and therefore secured. 2 Grant Gilmore, *Security Interests in Personal Property* § 35.2, at p. 918 (1965). Not wanting to encumber his property further, or risk losing otherwise exempt property in bankruptcy (a consensual security interest overrides the exemption, 11 U.S.C. §§ 522(c)(2), (f)), the debtor might have sought future credit only from lenders willing to lend on an unsecured basis, and the future-advances clause would foil him. Well,

but he signed it, so unless debtors are confused about the meaning of a future advance we are not clear what the abuse is in enforcing the dragnet clause according to its terms. If debtors are confused, the logical remedy is to require clear disclosure of the meaning and scope of the dragnet clause, rather than to refuse enforcement in all cases.

■ But Wisconsin, whose law all agree governs Terra's entitlement, is one of the states that in order to prevent the abuse of the dragnet clause requires "relatedness," so we must bow and inquire whether the future debt in this case, which arose from the debtors' 1992 purchase of chemicals and fertilizers, was related to their original debt, which arose from their 1991 purchase of chemicals and fertilizers; for it is the 1991 security agreement on which Terra relies. Obviously the 1992 purchase *was* related to the 1991 one. In fact the two purchases were identical except for the date. And there is no suggestion that these debtors did not understand the relevant implications of their having signed a future-advances clause. *In re Estate of Simpson, supra,* 403 N.W.2d at 793; *Schmitz v. Grudzinski,* 141 Wis.2d 867, 416 N.W.2d 639, 642 (App.1987).

■ The debtors argue that they should have been permitted to present parol evidence, which they say would have shown that the parties intended not to secure the debt for the 1992 purchases. They note that the stipulation of facts indicates that Terra is seeking postpetition interest on the unpaid loan at the rate of 18 percent, which they say is the unsecured interest rate, as shown by the fact that the interest rates in the 1990 and 1991 loan agreements between the debtors and Terra were 11 percent and 12 percent. They say this is evidence that the parties intended the 1992 loan to be unsecured. But the stipulation of facts states that "the debtors intended to give Terra a security interest in their 1992 crops" and that when Terra advanced them credit for 1992 it "intended to do so only on a secured basis."

■ Even if the stipulation did not foreclose an effort to show that the clause failed to reflect the intentions of the parties, we would greatly doubt that the debtors should be heard to argue that the future advances clause of the 1991 agreement, crystalline though it seems, was meant to mean nothing. It may be a bit strong to say that "the law abhors an interpretation that results in the language of a contract having no meaning at all," *In re Hill,* 981 F.2d 1474, 1487 (5th Cir.1993); see also *Fowler v. Boise Cascade Corp.,* 948 F.2d 49, 58 (1st Cir.1991), and we are not of the school that believes, contrary to all experience, that documents—contractual, statutory, or other—never contain redundant or meaningless terms. Still, a proposed contractual interpretation that would read out of a contract language obviously important to one of the parties faces and ought to face a distinctly uphill struggle for judicial acceptance; it is plain implausible.

■ The debtors cannot get to the top of the hill. Granted, the price in a contract can be evidence of its meaning, *In re Stoecker,* 5 F.3d 1022, 1029–30 (7th Cir.1993), since contracts usually contemplate at least a rough equivalence between payment and performance; and 18 percent in 1992 and 1993 seems a high price for secured credit. But it is common for promissory notes to provide for a higher interest rate in the event of default, and for creditors to attempt (properly or not, we need not decide) to obtain the default rate of interest during the period after the declaration of bankruptcy in which they are waiting to be paid. *In re Laymon,* 958 F.2d 72 (5th Cir.1992). We cannot find a default interest rate in the note that the debtors signed; but if, exploiting this omission, they had wanted to make something out of the postpetition interest rate, their attorney, who is also the trustee's attorney, should not have signed the paragraph of the stipulation in which the debtors acknowledge that they intended to grant Terra a security interest. That paragraph stipulates them out of court once the relatedness of the two purchases is established, as it clearly has been.

AFFIRMED.