2025 IL App (5th) 240813-U

NO. 5-24-0813

NOTICE

Decision filed 09/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 17-CF-145 |
| | ) | |
| CHAD M. EVANS, | ) | Honorable |
| | ) | Joshua C. Morrison, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held:* We vacate the trial court's judgment sentencing the defendant to five years in prison where the defendant was not eligible for an extended-term sentence. We remand this matter for a new sentencing hearing.

¶ 2    The defendant, Chad Evans, entered an *Alford* plea[1] to one count of unlawful possession of less than five grams of methamphetamine, a Class 3 felony, and was sentenced to 24 months of probation. Subsequently, the State filed a petition to revoke the defendant's probation, which was granted following a hearing, and the trial court resentenced the defendant to two years of probation. The State then filed a second petition to revoke the defendant's probation, which was also granted following a hearing, and the trial court resentenced the defendant to five years in prison.

_____

[1]An *Alford* plea is a guilty plea where a defendant maintains his innocence. See *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).

1

¶ 3    On appeal, the defendant contends that (1) the trial court committed plain error by relying on an incorrect sentencing range when it considered his eligibility for an extended-term sentence; (2) the trial court committed plain error by impermissibly punishing the defendant for his conduct while on probation as opposed to sentencing him for the original offense; (3) alternatively, the defendant's counsel was ineffective for failing to preserve the aforementioned allegations of error; and (4) the defendant's sentence was excessive where the trial court failed to properly consider his evidence in mitigation. For the reasons that follow, we vacate and remand for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5    On October 18, 2017, the State charged the defendant, by information, with one count of theft and one count of unlawful possession of less than five grams of methamphetamine. The information also indicated that the defendant was eligible for extended-term sentencing pursuant to section 5-5-3.2(b)(1) of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.2(b)(1) (West 2016)). At the defendant's first appearance on October 25, 2017, the State indicated that the defendant was extended-term eligible based on his previous plea of guilty to possession of methamphetamine.

¶ 6    On October 10, 2018, the defendant entered an *Alford* plea to one count of unlawful possession of less than five grams of methamphetamine. In exchange, the State agreed to dismiss the theft charge and to recommend a sentence of probation for 24 months. Before accepting the plea, the trial court questioned the defendant to determine whether the guilty plea was knowingly and voluntarily made. The trial court also admonished the defendant about the charges and the possible sentences. As for the defendant being extended-term eligible, the trial court stated as follows: "[The information] goes on to state that you are eligible for extended-term sentencing pursuant to 730 ILCS 5/5-5-3.2(b)(1). Now, ordinarily, the maximum penalty for a Class 3 Felony

of this nature is a sentence to the Illinois Department of Corrections for a period of two to five years. Because this one *** in particular is indicated as extended-term eligible, that could be increased to up to ten years." The trial court then admonished the defendant about the rights that he would be waiving by pleading guilty. After the State read the factual basis for the plea and set forth the defendant's criminal history, the trial court accepted the defendant's plea and sentenced him to the agreed sentence of probation for 24 months.

¶ 7     On October 9, 2019, the State filed a petition for violation of probation, asserting that the defendant violated his probation by testing positive for amphetamines and alcohol, by failing to complete a drug and alcohol evaluation, and by failing to report to probation on multiple occasions. At the September 30, 2020, hearing, the defendant admitted to the allegations in the State's petition. The trial court questioned the defendant to determine whether he understood the nature of the allegations against him, the possible sentences if his probation was revoked, and the rights that he was waiving by admitting to the allegations. The trial court then found that the defendant's admission was knowingly and voluntarily made, accepted the admission following the State's recitation of the factual basis, and set the matter for sentencing. On January 6, 2021, the trial court sentenced the defendant to probation for two years. The trial court also ordered the defendant to serve 90 days in jail, which was stayed pending the defendant's compliance with the terms and conditions of his probation. The trial court then admonished the defendant that since he was convicted of a Class 3 felony for which he was extended-term eligible, any revocation of his probation would result in prison.

¶ 8     On August 23, 2022, the State filed another petition to revoke the defendant's probation, alleging that the defendant had violated his probation by testing positive for amphetamines and alcohol and by failing to complete a drug and alcohol evaluation. Thereafter, on February 27, 2023,

the State filed an amended petition to revoke the defendant's probation, which included an allegation that the defendant had again violated his probation by testing positive for amphetamines and methamphetamines. On May 26, 2023, the defendant signed an acknowledgment of rights and admission of the State's petition to revoke.

¶ 9 The sentencing hearing began on September 29, 2023. Before testimony, the State indicated, without any objection from the defendant, that the State believed that the defendant was extended-term eligible. Then, the defendant, who was 45 years old, testified that his mother was wheelchair bound, he assisted in her daily care, and he was the only family member who was able to aid her. The defendant indicated that, as a child, he did not have any guidance from his parents, and his stepfather was verbally and physically abusive toward him and physically abusive toward his mother. He was in the army for five years, and during that time, he was stationed in Iraq for a total of two years. He explained that he was haunted by his time in the army and suffered from nightmares and experienced nervousness around crowds, loud noises, and being in public. He was diagnosed with a total disability and was receiving disability benefits through the military. He had been taking medication and getting mental health treatment through veterans' affairs, but he had been off his medication for a while and was currently not attending counseling. He was in the process of starting treatment again, but it was difficult to get appointments during the COVID-19 pandemic. The defendant started using marijuana and occasional psychedelics in high school and that escalated to using alcohol, methamphetamine, and cannabis to cope with his trauma and stress. He indicated that almost all of his previous convictions were drug and/or alcohol related. The sentencing hearing was then continued.

¶ 10 On April 26, 2024, the final sentencing hearing was held, and Brenda Brookman, the defendant's mother, provided the following testimony. Brookman testified that she was 71 years

4

old and was wheelchair bound. Brookman's daughter was her caretaker during the day, and the defendant was her caretaker during the night while her daughter was at work. As part of his caretaking duties, the defendant took Brookman to her medical appointments, assisted her with her medication and other medical needs, and assisted her with her dogs. Brookman had medical appointments at least once per week. Since the defendant was in custody, the defendant's girlfriend was assisting with Brookman's care. Brookman explained that if the defendant was incarcerated, she would have to move to a nursing home.

¶ 11    After the testimony, the trial court explained the charge and the possible punishments to the defendant, and after checking with the State, informed the defendant that he was eligible for an extended-term sentence. The trial court noted, without any objection from defense counsel, that the sentence range for a Class 3 felony was normally 2 to 5 years in prison, but since the offense was extended-term eligible, the sentencing range was instead 2 to 10 years.

¶ 12    The State then argued that a sentence of five years in prison was appropriate, noting that the following statutory factors in aggravation applied: the defendant had a history of prior criminal activity, and a sentence of imprisonment was necessary to deter others from committing the same crime. The State also argued that the defendant's criminal conduct was the result of circumstances likely to reoccur, that the defendant's character and attitude indicated that he was likely to commit another crime, and that the defendant was particularly unlikely to comply with probation.

¶ 13    Regarding the defendant's criminal history, the State noted that the defendant had a variety of convictions for different crimes starting with a conviction for disorderly conduct and escalating to domestic battery and an aggravated battery that was reduced to a Class A battery. The State also noted that the defendant had a "Marion County possession of methamphetamine case";

5

and in that case, there were "multiple failures to appear by the defendant." Also, the State had filed a third petition to revoke in that Marion County case. Further, the State indicated that the defendant pled guilty to criminal damage to property in another Marion County case, and a petition to revoke had also been filed in that case. As for deterrence, the State argued that possession of methamphetamine was a common crime that the trial court saw on a daily basis as well as a common crime for the defendant. The State acknowledged that the defendant had a drug abuse problem but argued that a sentence in prison would deter the defendant and others from committing the same offense.

¶ 14     The State noted that the defendant was placed on probation in this case in October 2018, and two petitions to revoke that probation had been filed. Immediately upon being placed on probation, the defendant failed to comply by missing telephone calls, being unavailable for home visits, and testing positive at his drug test. The State noted that even after it filed its first petition to revoke, the defendant continued his consistent pattern of failing to report and testing positive at his drug screens, even though the defendant knew that he could be incarcerated. The State acknowledged that the defendant had mental health issues but noted that the defendant had failed to address those issues. The State argued that the defendant had failed to take accountability for his actions, that he had numerous excuses for his previous failures to comply with probation, and that there was no reason to believe that he would comply with probation in the future.

¶ 15     Defense counsel argued that the defendant should be sentenced to the maximum term of probation and 30 months of home confinement. Although defense counsel acknowledged that the defendant had not successfully completed probation in the past, counsel argued that the trial court should consider the defendant's past trauma, his addiction issues, and his mental health issues. Defense counsel also argued that the defendant's incarceration would disrupt his family as his

mother would have to move to a nursing home. However, defense counsel argued that if the defendant was sentenced to a period of incarceration, the defendant should be sentenced to the minimum term. The defendant then made a statement in allocution in which he admitted that he made mistakes, he indicated that he had been clean from methamphetamine for months, and he expressed his intention to be a positive example and to remain clean from methamphetamine.

¶ 16 In announcing its sentence, the trial court noted that the defendant had multiple charges and multiple pending petitions to revoke probation. The trial court stated that there had "been a seven-year, nearly seven-year period that this case [had] been open in some regard, that the defendant [had] been given not one chance, not two chances, as there [were] two [petitions to revoke] here, multiple chances. He [had] not complied with probation." The trial court then stated that it had to sentence the defendant to a period of incarceration for deterrence purposes and to do otherwise would deprecate the seriousness of the offense. The trial court noted that in fashioning the appropriate sentence, it had considered the cost of incarceration, the statutory factors, the factors in mitigation and aggravation, and the fact that the defendant had not complied with probation in the past. The trial court noted that it could not give the defendant probation one more time; that the defendant's lack of compliance in every case had brought the trial court to this point; and given that there were multiple outstanding probation petitions in Marion County, the defendant was lucky that the State was not asking for a longer sentence. The trial court then sentenced the defendant to five years in prison to be followed by six months of mandatory supervised release (MSR). The trial court then stated that it would rather have sentenced the defendant to veteran's court but that option was unavailable.

7

¶ 17    On May 28, 2024, the defendant filed a motion for reduction of his sentence, arguing that his sentence was excessive. Following a hearing held on June 28, 2024, the trial court denied the defendant's motion. The defendant appeals.

¶ 18                                    II. ANALYSIS

¶ 19    The defendant contends that the trial court relied on an incorrect sentencing range when it considered his eligibility for an extended-term sentence. Specifically, the defendant argues that the felony upon which the trial court based its decision that the defendant was extended-term eligible was not considered a previous felony conviction for purposes of extended-term eligibility. Thus, the defendant contends that he was not extended-term eligible. In making this argument, the defendant acknowledges that he has forfeited review of this issue because he failed to contemporaneously object and raise the issue in his written posttrial motion. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, the defendant argues that we should review the issue under both prongs of the plain-error doctrine.

¶ 20    The plain-error rule is a narrow and limited exception to the general rule of forfeiture. *Id.* at 545. Under the plain-error doctrine, a reviewing court will review an unpreserved error when a clear and obvious error occurs and: (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant; or (2) the alleged error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. Moon*, 2022 IL 125959, ¶ 20. The first step in the plain-error analysis is determining whether a clear or obvious error occurred. *People v. Johnson*, 2024 IL 130191, ¶ 44.

¶ 21    Section 5-5-3.2(b)(1) of the Code provides that the following may be considered by the trial court as a reason to impose an extended-term sentence:

"When a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts[.]" 730 ILCS 5/5-5-3.2(b)(1) (West 2022).

The date of a conviction for purposes of determining the 10-year period for section 5-5-3.2(b)(1) is the date of the entry of the sentencing order. *People v. Robinson*, 89 Ill. 2d 469, 476-77 (1982).

¶ 22    In the instant case, the trial court originally sentenced the defendant on October 10, 2018, and then after he violated his probation for the second time, resentenced him to five years in prison on April 26, 2024. The trial court subsequently denied the defendant's motion to reconsider his sentence on June 28, 2024. During the April 2024, sentencing hearing, the State and the trial court both indicated, without any objection from defense counsel, that the defendant was extended-term eligible based on Marion County case No. 17-CF-45. In that case, the defendant pled guilty to and was sentenced to probation for unlawful possession of methamphetamine, a Class 3 felony, on February 28, 2017. However, the defendant's probation was revoked on May 21, 2019, and again on August 24, 2021. He was resentenced to probation on both occurrences. Thereafter, on August 28, 2024, the defendant's probation was again revoked, and he was resentenced to four years in prison. Thus, the final sentencing in Marion County case No. 17-CF-45 occurred after the defendant was convicted in this case. Accordingly, the question we must address when determining the defendant's eligibility for an extended-term sentence is whether the date of the conviction in case No. 17-CF-45 is the date of the defendant's initial sentencing following his guilty plea or the date of his final sentencing following the third revocation of his probation. If the date of the final sentencing order is the date of his conviction, then the Marion County felony conviction would

9

not be considered a previous conviction that would make the defendant extended-term eligible in this case.

¶ 23    The question of whether the trial court has imposed an unauthorized sentence is a question of law that is subject to *de novo* review. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 148. In addition, statutory interpretation is subject to *de novo* review. *People v. Taylor*, 221 Ill. 2d 157, 162 (2006). In *People v. Lemons*, 191 Ill. 2d 155, 158 (2000), the supreme court addressed the effect of resentencing for probation violations on extended-term sentencing under section 5-5-3.2(b)(1) of the Code (730 ILCS 5/5-5-3.2(b)(1) (West 1996)). There, our supreme court found that for the purposes of extended-term sentencing based on a prior conviction, the applicable 10-year limitation period began to run on the date that the defendant's sentence of probation was last revoked, and he was last sentenced, rather than on the original date of sentencing. *Lemons*, 191 Ill. 2d at 160. In making this decision, the supreme court explained that once probation was revoked, the original sentence no longer existed, and the sentencing court was free to impose any sentence it could have originally imposed. *Id.* The supreme court also explained that to rule otherwise would allow a defendant to benefit by violating his probation and postponing the resentencing on the revocation of probation in order to later escape sentencing under the extended-term statute provisions. *Id.*

¶ 24    Pursuant to *Lemons*, the defendant's date of conviction, for purposes of extended-term eligibility, in the Marion County case would be the date when the defendant's sentence of probation was last revoked, and he was last sentenced. Thus, his date of conviction for that case would be August 28, 2024, which is after the conviction entered in this case. Accordingly, the Marion County conviction for unlawful possession of methamphetamine would not be considered a previous conviction that would make him eligible for extended-term sentencing in this case.

10

Moreover, we note that the Marion County criminal history[2] for case No. 17-CF-45 indicates that, on February 28, 2017, when the defendant initially pled guilty, the judgment was "withheld." Thus, it appears that there might not even have been a judgment entered on that date. Accordingly, we conclude that the defendant has established that the trial court committed a clear and obvious error when it considered him extended-term eligible when sentencing him.

¶ 25 The next step in our plain-error analysis is to determine whether the evidence at the sentencing hearing was closely balanced or the error was so egregious as to deny the defendant a fair sentencing hearing. As we find that the error was so egregious as to deny the defendant a fair sentencing hearing, we need not discuss the closely balanced prong to plain-error review. Under the second prong of the plain-error doctrine, the reviewing court's primary concern is "addressing unpreserved errors that undermine the integrity and reputation of the judicial process regardless of the strength of the evidence or the effect of the error" on the outcome of the proceedings. *People v. Jackson*, 2022 IL 127256, ¶ 24. When a defendant establishes plain error under this prong, prejudice is presumed. *Moon*, 2022 IL 125959, ¶ 27.

¶ 26 Second-prong plain error has been found where the trial court sentenced the defendant under the mistaken belief that the defendant was eligible for extended-term sentencing. *People v. Crawford*, 2023 IL App (4th) 210503, ¶ 46. "A fair sentencing hearing necessarily requires a trial judge who knows the minimum and maximum sentences for the offense." (Internal quotation marks omitted.) *Id.* When a trial court misunderstands and misstates the applicable sentencing range, the defendant is entitled to a new sentencing hearing when it appears that the mistaken belief of the trial judge arguably influenced the sentencing decision. *Id.* ¶ 51.

---

[2]The appellate court may take judicial notice of circuit court records. *In re N.G.*, 2018 IL 121939, ¶ 32; *Metropolitan Life Insurance Co. v. American National Bank & Trust Co.*, 288 Ill. App. 3d 760, 764 (1997).

¶ 27    The nonextended term sentencing range for a Class 3 felony is 2 to 5 years, while the applicable sentencing term for an extended-term eligible defendant is 5 to 10 years. See 730 ILCS 5/5-4.5-40(a) (West 2022). In this case, the trial court sentenced the defendant to five years in prison. During the sentencing hearing, and at other proceedings prior to sentencing, the trial court referenced the fact that the defendant was extended-term eligible. In addition, at the sentencing hearing, the State also noted that the defendant was extended-term eligible. Thus, even though the defendant's sentence fell within the permissible nonextended sentencing range, we conclude that the trial court's mistaken belief about the applicable sentencing range arguably had an impact in the defendant receiving the sentence that he received. Accordingly, we find that the trial court's mistaken belief that the defendant was eligible for extended-term sentencing deprived the defendant of a fair sentencing hearing and therefore constituted second-prong plain error.

¶ 28    Since we find that the trial court's mistaken belief that the defendant was extended-term eligible arguably influenced its sentencing decision, the proper remedy is to remand for a new sentencing hearing. See *People v. Young*, 2018 IL App (3d) 160003, ¶ 12; *People v. Bailey*, 2015 IL App (3d) 130287, ¶ 16; *People v. Hurley*, 277 Ill. App. 3d 684, 688 (1996). Because we find plain error occurred and remand for resentencing, we will not consider the alternative issues raised in the defendant's briefs. As such, we express no opinion on the defendant's argument that, at sentencing, the trial court improperly punished the defendant for his conduct while on probation. However, when resentencing the defendant, the trial court should be mindful of the following principles that are articulated in the case law. Although the trial court may properly consider the defendant's conduct while on probation in assessing the defendant's rehabilitative potential, the trial court may not punish a defendant for uncharged conduct that occurred while on probation. *People v. Varghese*, 391 Ill. App. 3d 866, 877 (2009). Thus, the trial court, at resentencing, should

make sure that it does not improperly comingle the defendant's conduct while on probation with his original offense. See *id.*

¶ 29 Moreover, during the oral argument in this case, it was suggested that the six-month MSR term that the trial court originally imposed was less than the statutory requirement. Thus, in determining the defendant's new sentence, we caution the trial court to impose an MSR term that is in compliance with the relevant sentencing statute, as a sentence that does not conform to the statutory requirement is void. See *People v. Strom*, 2012 IL App (3d) 100198, ¶ 9.

¶ 30                                    III. CONCLUSION

¶ 31 For the foregoing reasons, we vacate the circuit court's judgment sentencing the defendant to five years in prison and remand the cause for a new sentencing hearing.


¶ 32 Vacated and remanded.